OPINION
By BARNES, J.
The above entitled cause is now being determined as an error proceeding by reason of defendant John L. Reek’s appeal on questions of law and fact.
Although the new Procedural Act has been in existence for several years and practically all phases construed by the courts, yet counsel still have difficulty in determining when a case should be appealed on law or law and fact.
In the instant ease appellant designates both forms of appeal. At the time of the oral hearing we noted this and stated to counsel that we must know upon which appeal counsel was proceeding. After some colloquy in which counsel on both sides participated, counsel for appellant said he desired a hearing de novo. No objection was raised by counsel on the opposite side.
It was then agreed that the transcribed record evidence presented in the trial court should be *218 the sole and only evidence presented in our court.
When we come to consider the case we now find that counsel for appellant formulates his brief on the basis of an error proceeding. He first sets out assignments of error and then later discusses the claimed errors.
We hope that counsel understand in a de novo hearing the judgment of the trial court is suspended and we determine the case as though it originated in our court, and give no attention to the findings and judgment of the trial court except as they may be helpful to us in the reasoning.
Appellant gave an appeal bond and thereby complied with all the statutory provisions for a de novo hearing. There is a very serious question as to whether or not appellant was entitled to a de novo hearing had appellees objected thereto.
Under the Ohio Constitution an appeal on questions of law and fact can only properly be made in a chancery case. If objection had been made to hearing de novo, it would have been our obligation to determine whether or not the instant action was one in chancery. However, the Ohio courts have determined on innumerable occasions that in the absence of objection, a reviewing court may hear a case de novo on an appeal on law and fact even though the case may not be one in chancery.
Our determination of this case will be such that the judgment will be the same, whether or not we determine it as an error proceeding or de novo.
On November 25, 1940, the plaintiff, an infant, through his next friend, filed a petition primarily against John L. Reck, praying that the conveyance made to him by his brother, Walter E. Reck, be set aside and cancelled; a receiver be appointed to collect the rents and profits; that Hattie A. Reck be compelled to account for the rents and profits which she has collected, and such other and further relief as plaintiff is entitled to in equity.
According to the petition, Walter E. Reck, father of plaintiff, died on September S, 1940, at Dayton, Ohio, leaving Hattie A. Reck his surviving widow, and" the plaintiff, together with Elma Judd and Florence Bishop, his only surviving children and heirs át law. The widow, Hattie A. Reck, was the duly qualified and acting administrator of the decedent, Walter E. Reck.
Plaintiff for his cause of action complains that on the 10th day of October, 1929, Walter E. Reck, now deceased, made a pretended conveyance of the real estate hereinafter described to his brother, Dr. John L. Reck, of Sheridan, Indiana, said deed of conveyance being recorded in the deed records of Montgomery County, Ohio. The petition sets out detailed description of the properties, both located in Dayton, Montgomery County, Ohio. The petition further alleges that in truth and in fact, by agreement between the said John L. Reck and Walter E. Reck, the pretended conveyance was fraudulently made shortly before the said Walter E. Reck left the State of Ohio to escape the obligation of a certain order and judgment heretofore entered in the Common Pleas Court , of Montgomery County, Ohio, in a certain divorce action entitled Walter E. Reck vs. Leota J. Reck, wherein said Walter E. Reck was ordered and adjudged to pay for the support of this plaintiff the sum of $7.50 per week. The petition further alleges that Dr. John L. Reck never gave any consideration for real estate, has never exercised *219 any right as owner of said property, has not collected the rents and profits therefrom or paid the taxes or upkeep thereof; that he has held the title to said property solely as trustee for the benefit of the said Walter E. Reek, and that ths title at the time of the death of the said Walter E. Reck vested in plaintiff and defendants Elma Judd and Florence Bishop. The petition further alleges 'that since the decease of Walter E. Reck his surviving widow, Hattie A. Reck, has been collecting the rents and profits of said real estate,. wholly failing and neglecting to declare the same as a part of the assets of the estate of Walter E. Reck, and converting the same to her own use. It is further alleged that Leota J. Reck has some claim as a creditor of the estate of Walter E. Reck, deceased, growing out of an order and judgment in the case of Walter E. Reck v Leota J. Reck, above mentioned.
On December 4, 1940, the plaintiff filed an amended petition, setting out two causes of action, the first of which is substantially the same as set out in the original petition.
A second cause of action is added, wherein there is alleged the respective interests of the surviving heirs of Walter E. Reck, deceased, and asking partition. The second cause of action also contains an allegation that the Gem City Building and Loan Association, of Dayton, Ohio, claims a lien on said premises by virtue of a certain mortgage encumbrance unreleased of record.
The prayer of the amended petition is the same as the prayer in the original petition, with the added matter requesting partition and that the Gem City Building and Loan Association be required to set up whatever claim it may have against the real estate.
The first pleading to be filed by the defendants was that of the Gem City Building and Loan Association!, wherein it sets out in regular form its note and obligation and mortgage lien upon the premises.
The next pleading is the answer* of Hattie A. Reck, surviving widow of Walter E. Reck, deceased, wherein she admits that she is the widow of Walter E. Reck, and also the duly appointed and qualified administratrix. She further avers that she was married to the said Walter E. Reck on the 16th day of February, 1930, which was subsequent to the time of the conveyance referred to in plaintiff’s amended petition. She further avers that she has no knowledge concerning the circumstances oí said conveyance and by reason thereof denies all the allegations contained in the petition relative or pertinent thereto. She makes specific denial that she has collected any rents or profits or converted the same to her own use. Admits that she did not declare such real estate as part of the assets of the estate of Walter E. Reck for the reason that such real estate appears in the name of John L. Reck on the records of Montgomery County, and to the best of her knowledge and belief said real estate is the property of the said John L. Reck.
By way of answer to the second cause of action in the amended petition, she denies that there is sufficient personal property in the estate of Walter E. Reck to pay all of the debts and claims against the decedent’s estate. She makes the further averments setting out the total assets of the estate of Walter E. Reck, together with the total indebtedness, and thereby claims that the indebtedness is in excess of the assets.
*220 The answer of John L. Reck admits that the property described was transferred to him for a valuable consideration on the 10th day of October, 1929. He denies each and every other allegation set forth.
The defendant Leota J. Reck, mother of plaintiff, filed an answer and cross-petition, wherein she states that on the 7th day of May, 1941, in the Common Pleas Court of Montgomery County, Ohio, she recovered a judgment against Hattie A. Reck, administratrix of the estate of Walter E. Reck, deceased, in the amount of $1703.00, with interest from the 21st day of March, 1935. In the prayer she asks that such judgment be declared a, lien on the real estate involved in this action, and that in the event of partition and sale of said real estate, there shall be set aside to her in the proper order of priority the said sum of her judgment, plus interest and costs.
The case came on for trial before one of the regularly elected judges of the Court of Common Pleas of Montgomery County, Ohio, without a jury. After the evidence was fully submitted and arguments made, the trial court rendered judgment for the plaintiff, setting aside the conveyance made to Dr. John L. Reck, and ordered partition. He also made findings in favor of the Gem City Building and Loan Association and Leota J. Reck, determining that they had liens in the amount claimed and directed that upon sale of the property, they be paid, first to the Gem City Loan and second to Mrs. Leota J. Reck.
Motion for new trial was duly filed, overruled and judgment entered. Within proper time the defendant Dr. John L. Reck, through his counsel, filed notice of appeal and thereby lodged the cause in cur court.
Through the evidence many issues raised in the pleadings are eliminated.
First, there is no supporting evidence to the allegation that Hattie A. Reck, surviving widow and administratrix, assumed possession of the described premises, collected the rents and profits therefrom and converted the same to her own personal use. We need give no further consideration to this issue.
It is further conclusively established through the evidence that all debts against the estate of Walter E. Reck have been paid except the mortgage of the Gem City Building and Loan Association and the judgment of Leota J. Reck.
The statement thus far made in this opinion is unusually long, but justified in order to have a full and complete understanding of the nature of the issues as presented through the pleadings.
The first thought that presents itself to our minds is the right of the plaintiff to maintain the action, even though all allegations of his petition be admitted as true.
Considered in the fight of the uncontradicted evidence, we have no hesitancy in saying that plaintiff’s right of action must fail. This conclusion is so obvious that we have searched the brief of counsel for appellees for their theory and supporting citations. The brief makes no citation of law on the major question involved. On the first page of appellees’ brief, we do find the statement that plaintiff’s cause of action depends on the allegations in the petition that the defendant, John L. Reck, “had held title to said property solely as trustee.” Immediately following counsel state in their brief that the above statement is supported by the following evidential facts: “John L. Reck gave no considera *221 tion for the real estate; he never exercised the right of ownership; he has not collected the rents and profits; he has not paid the taxes, nor looked after the.upkeep; and Walter E. Reck conveyed the property to John to avoid alimony payments to Walter’s wife.” with the additional allegation dictated into the record at the start of the trial in effect that Walter E. Reck made the conveyance to his brother to escape legal entanglements with a woman whose first name was Betty.
The evidence falls far short of supporting all of these matters which counsel designate as evidential facts. For instance, the evidence is conclusive that there was a valuable consideration passing between Walter E. Reck and his broker, John L. Reck. The consideration named in the deed was one dollar and other valuable considerations. In addition, following the warranty clause, the deed of conveyance provided that John L. Reck assumed and agreed to pay the mortgage indebtedness to the Gem City Building and Loan Association. At that time this mortgage indebtedness amounted to over $6800.00. At the time of the deed of conveyance the Gem City Building and Loan Association was requested by the Recks to transfer the mortgage obligation to the name of John L. Reck and this was done. Under the deed of conveyance it was also subject to a leasehold. Of course, John L. Reck succeeded to all rights pf the lessor. Furthermore, the uncontradicted evidence was that an agreed consideration between Walter E. Reck and John L. Reck was $7000.00, of which $6800.00 was to the Gem City Building and Loan Association; the balance being paid in cash.
There was an abundance of evidence that John L. Reck exercised the right of ownership. It is urged by plaintiff-appellee that any acts of ownership exercised by John L. Reck were in furtherance of the fraudulent arrangement between the two brothers, and intended to cover up the fraudulent transaction. It is probably true that John L. Reck never collected any rents for his own personal use, and in fact all rents were paid into the Building and Loan Association in order to reduce the mortgage indebtedness, and this indebtedness was substantially reduced. John L. Reck testified that he never received a dime from the property, but on the contrary it was continuously in the red.
At the time of the transaction the rental from the property under the leasehold was more than sufficient to pay the monthly amounts due the Building and Loan Association, but shortly thereafter we entered into the general financial distress and the lessees became delinquent in the payment of their rents. From time to time the amount was reduced and finally they were asked to vacate the premises and when they did vacate, they were owing considerable rent. From time to time new leases were made with other parties at marked reductions from that of the original lease. All tenants were requested to pay the rent into the Building and Loan Association. From time to time the ■ monthly payments to the Building and Loan were delinquent and the defendant John L. Reck made frequent advances through his personal check.
John L. Reck presented a great number of checks, showing payment of taxes upon the premises, the total of which amounted to something like $1500.00. In addition, he presented in evidence the tax receipts. It is further urged that John did not look after the *222 upkeep. This claim is not supported by the evidence.
John lived in Sheridan, consequently had representatives living in Dayton to look after some of the details. A brother-in-law, who was a tenant in the property for a time, did this in part. An agent unrelated had it in charge for a time. Walter gave it some attention. It was urged by plaintiffappellee that Walter’s attention was on his own behalf, and it is the claim of John that he was acting for him.
On the question that Walter-made the conveyance in order to escape a legal entanglement with a woman whose- fiist name was Betty, the record presents very little evidence.
The remaining claimed evidential fact was the allegation that Walter conveyed the property to John to avoid alimony payments to Walter’s wife.
The evidence is clear that at the time of the conveyance the weekly payment of $7.50 had all been paid, and continued to be paid with reasonable regularity until approximately two years later.- Some time in 1931 Walter moved out of the state and he then discontinued his weekly payments. Two years later, probably in 1934 he returned to Dayton and at the instance of his former wife was arrested. He purged himself of the contempt charge by making weekly payments of $5.00 per week as long as he lived. So far as is shown nothing was paid on the delinquencies and the judgment which his former wife obtained against the administratrix after Walter’s death, comprises the total delinquency.
Again, we have made a rather lengthy review of appellees’ contention of evidential facts claimed to support their statement that John held the premises in question solely as trustee.
We have reviewed this evidence primarily to disclose that the sole basis of plaintiff-appellees’ contention is grounded on the claim that the conveyance was made for the purpose of defrauding creditors. This is necessarily true since practically all the things complained of would be immaterial and perfectly legal as between brothers. In other-words, as between Walter and John, Walter had a right to give the property to his brother John if he desired so to do. Thereafter it would be immaterial as to the exercise of the right of ownership, the collection of rents- and profits, payment of taxes and upkeep. As against a suit by a creditor these questions would be pertinent. However, the plaintiff-appellee was not a eerditor and did not bring his action as such. He bases his claim entirely as an heir of his father, Walter. Under this situation his rights can rise no higher than those of his father. The fact the alimony allowance which was made to Leota J. Reck, former wife of Waiter, was in part for the support of the plaintiff, would not make the plaintiff a creditor. This is evidenced by the fact that the wife, Leota J. Reck, recovered a judgment for the full amount. No doubt the allowance was made to her for the support of herself and minor child. In contemplation of law it was remuneration to her for the support that she would give to the minor child.
The law is well recognized that real estate conveyed for the purpose ' of defrauding. creditors can not be recovered back by the grantor. This principle is founded upon the well recognized rules of equity that courts will not lend their aid to support a litigant against his own wrong. The parties will be left just where the court finds them.
*223 Since Walter, if he were living, could not recover under a claim of fraudulent conveyance, it is equally true that his heir can not recover. An heir has no vested right to inherit; the only right he has is statutory. If at the time of Walter’s death he left no legal or equitable right in real estate, there is nothing for the heir to inherit.
We have heretofore stated that counsel for appellee has cited us no authority on the major question involved. We do, however, have cited to us by counsel for appellants two sections of the General Code, both involving conveyances made to defraud creditors. These are §§8618 and 11104 GC.
The first section is very broad in its language, and in substance states that conveyances made with intent to defraud creditors shall be utterly void and of no effect.
Section 11104 GC is qualified somewhat in the succeeding sections.
The courts of Ohio and other authorities have announced repeatedly that §8618 GC, is not as broad as its language might imply. It has been definitely determined that this language of the section is not for the benefit of strangers, nor grantor or his heirs. The Ohio cases have been corn-piled and reference thereto will be found in the notes under the subject of Fraudulent Conveyances, Vol. 19 O. Jur., §§23, 24, 25, 26, 98 and 99, pages 701, 703, 704 and 774.
To quote the sections in full or make reference to the numerous authorities referred to in the notes would add unnecessarily .to the length of this opinion. Nothing less than a reading of the text and the authorities in their entirety can give a complete understanding of the Ohio rule. Suffice it to say that the authorities very clearly establish the principle that under a state of facts such as is presented in the instant case, the plaintiff may not recover.
We are constrained to the view that plaintiff’s petition must be dismissed and judgment entered for the defendant, with costs. Entry may be drawn in accordance with this opinion.
HORNBECK, J., concurs.
GEIGER, PJ., dissents.